## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| HAXHE PROPERTIES, LLC, BELLA FIORE COMPANY, INC.,<br>    *Plaintiffs*, | No. 3:20-cv-01594 (KAD) |
| v. | |
| CINCINNATI INSURANCE COMPANY,<br>    *Defendant.* | June 4, 2021 |
| CINCINNATI INSURANCE COMPANY,<br>    *Counterclaim-Plaintiff*, | |
| v. | |
| HAXHE PROPERTIES, LLC, BELLA FIORE COMPANY, INC.,<br>    *Counterclaim-Defendants.* | |

## MEMORANDUM OF DECISION RE:
## PLAINTIFFS-COUNTER-DEFENDANTS' MOTION TO STRIKE (ECF NO. 27)

Kari A. Dooley, United States District Judge:

This lawsuit arises out of a fire that occurred on October 1, 2018 at a property and restaurant owned by Plaintiffs-Counterclaim-Defendants Haxhe Properties, LLC ("Haxhe") and The Bella Fiore Company, Inc. ("Bella Fiore," and, collectively, the "Plaintiffs"), respectively. Plaintiffs bring claims sounding in breach of contract and breach of the implied covenant of good faith and fair dealing against Defendant-Counterclaim-Plaintiff Cincinnati Insurance Company ("Cincinnati" or the "Defendant"), which had issued a policy to insure the restaurant business and property against loss or damages caused by fire. The Defendant filed a counterclaim seeking a

1

declaratory judgment that it has no further obligations to the Plaintiffs under the policy as well as a number of affirmative defenses.  Plaintiffs have moved to strike five of the Defendant's affirmative defenses pursuant to Fed. R. Civ. P. 12(f) as insufficiently pled (ECF No. 27), which the Defendant opposes.  (ECF No. 32.)  For the reasons that follow, the motion to strike is GRANTED in part and DENIED in part.

**Background and Allegations**

According to the allegations in Plaintiffs' First Amended Complaint (the "FAC," ECF No. 20), Haxhe owned a property located at 543 West Thames St. in Norwich, Connecticut at which Bella Fiore owned and operated a restaurant.  (FAC ¶¶ 1–2.)  Cincinnati issued a policy to the Plaintiffs to insure the property and restaurant against loss or damages (the "Policy").  (*Id*. ¶ 4.) On October 1, 2018, while the Policy was in effect, the property and restaurant suffered damages from a fire, causing losses to Plaintiffs' property and business.  (*Id*. ¶¶ 5–6.)  Despite fulfilling all terms and conditions of the Policy, Plaintiffs allege that Cincinnati has not compensated Plaintiffs for the losses and damages covered thereunder and has thereby breached its insurance contract. (*Id*. ¶¶ 7–9.)  Plaintiffs also bring a claim for breach of the implied covenant of good faith and fair dealing in connection with Cincinnati's alleged refusal to participate meaningfully in the appraisal process that Plaintiffs invoked under the Policy, including by failing to investigate timely Plaintiffs' claims and the replacement and repair costs associated with their losses.  (*Id*. ¶¶ 10–36.)

On January 19, 2021, the Defendant filed its answer, affirmative defenses, and counterclaim. (ECF No. 26.)  Cincinnati alleges therein that during its investigation of the fire that occurred on October 1, 2018, it learned of prior fires on the premises that Plaintiffs had not disclosed and prior fire damage that had not been remediated.  (Counterclaim ¶¶ 5–6.)  It further alleges that Plaintiffs sought payment for losses and damages that were not covered by the Policy

and that Plaintiffs' concealment or misrepresentation of material facts renders any coverage void pursuant to the Policy's Concealment, Misrepresentation or Fraud provision.  (*Id.* ¶¶ 7–9.)

The Defendant also asserts a number of affirmative defenses to the Plaintiffs' claims.  At issue here are the second, fourth, sixth, tenth, and thirteenth affirmative defenses, which state, respectively:

- Plaintiffs' claims are barred by the doctrines of waiver and/or estoppel.

- Plaintiffs' claims are barred to the extent they have failed to mitigate, minimize and/or avoid their claimed damages.

- Plaintiffs' claims are barred by reason of their breach of the insurance policy with Cincinnati.

- Plaintiffs' claims against Cincinnati are barred, in whole or in part, by the terms, exclusions, limitations and/or conditions of the Policy.

- Plaintiffs' claims are barred to the extent the Plaintiffs or their affiliates, agents, public adjuster, brokers or other representatives intentionally or unintentionally failed to disclose or concealed, omitted, or misrepresented facts material to the coverage, the property, the claims and/or alleged damages.

Plaintiffs argue that each of these affirmative defenses fails to satisfy the pleading standard required by Rule 8 of the Federal Rules of Civil Procedure.  They have moved to strike each defense pursuant to Fed. R. Civ. P. 12(f), which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

**Standard of Review**

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint "must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir.

2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"[T]he plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task."  *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).  Therefore, the fact "that an affirmative defense, rather than a complaint, is at issue . . . is relevant to the degree of rigor appropriate for testing the pleading of an affirmative defense," as "the pleader of an affirmative defense has only the 21-day interval to respond to an original complaint" whereas "[t]he pleader of a complaint has the entire time of the relevant statute of limitations to gather facts necessary to satisfy the plausibility standard."  *Id*.  In addition, "[t]he relevant context will be shaped by the nature of the affirmative defense" and whether the facts needed to support it are "readily available."

An affirmative defense should also "be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims."  *Id*.  Finally, "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation," but  "prejudice may be considered and, in some cases, may be determinative, where a defense is presented beyond the normal time limits of the Rules, especially at a late stage in the litigation, and challenged by a motion to dismiss or opposed by opposition to a Rule 15(a) motion."  *Id*. at 98–99.

**Discussion**

Citing *GEOMC Co.*, Plaintiffs argue that the targeted affirmative defenses "fail to provide sufficient detail to survive the Second Circuit's plausibility standard or to allow Plaintiffs the opportunity to properly tailor their discovery requests." (Pl.'s Mem. at 4.)  Specifically, Plaintiffs assert that: (1) the second affirmative defense does not indicate what actions or inactions on the part of the Plaintiffs gave rise to waiver and/or estoppel; (2) the fourth affirmative defense does not apprise the Plaintiffs of what actions constituted their alleged failure to mitigate their damages; (3) the sixth affirmative defense does not identify the facts giving rise to Plaintiffs' alleged breach of the insurance policy; (4) the tenth affirmative defense likewise does not identify which portions of the Policy allegedly bar the Plaintiffs' claims; and (5) the thirteenth affirmative defense asserts only vague allegations concerning the actions of unidentified third parties. (*Id*. at 4–5.)  The Court addresses each affirmative defense in turn.

### *Second Affirmative Defense – Waiver/Estoppel*

With respect to the second affirmative defense, the Court agrees with the Plaintiffs that the Defendant's assertion that "Plaintiffs' claims are barred by the doctrines of waiver and/or estoppel" is too conclusory to meet the applicable pleading standard. *See, e.g.*, *Silva v. Hornell Brewing Co.*, No. 20-CV-756 (ARR) (PK), 2020 WL 8079823, at \*4 (E.D.N.Y. Dec. 1, 2020) (concluding that "the bare, boilerplate statement that 'Plaintiff's claims are barred by the doctrine of estoppel,' without offering any factual basis in support," was insufficient to satisfy the standard set forth in *GEOMC Co*.) (alterations omitted); *Jablonski v. Special Couns., Inc.*, No. 1:16-CV-05243 (ALC), 2020 WL 1444933, at \*3 (S.D.N.Y. Mar. 25, 2020) (holding that waiver and collateral estoppel defenses were insufficient and should be stricken where the "Defendant fail[ed] to provide any factual support for [these] defenses").

Specifically, Cincinnati has not identified any facts suggesting that Plaintiffs have voluntarily relinquished a known right as required to state a waiver defense. *See Walters v. Performant Recovery, Inc.*, 124 F. Supp. 3d 75, 80 (D. Conn. 2015) (explaining that "[t]o establish waiver under Connecticut law, it must be shown that the party understood its rights and voluntarily relinquished them anyway," and granting motion to strike affirmative defense where the waiver defense was "devoid of any facts stating or identifying how Plaintiff's claims were waived," leaving "Plaintiff (and the Court) . . . guessing how a waiver defense would apply here, particularly since there is no indication that Plaintiff has intentionally relinquished any rights") (quotation marks, alterations, and citations omitted). Likewise, although Cincinnati alleges in its counterclaim that Plaintiffs concealed or misrepresented material facts concerning the property, claim, and coverage at issue, it does not set forth any facts that would establish that Cincinnati relied on Plaintiffs' misrepresentations to its detriment and thereby suffered injury or prejudice so as to plausibly state an equitable estoppel defense. "Equitable estoppel in Connecticut has two elements: (1) 'the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief'; and (2) 'the other party must change its position in reliance on those facts, thereby incurring some injury.'" *Int'l Strategies Grp., Ltd. v. Ness*, 645 F.3d 178, 185 (2d Cir. 2011) (quoting *Conn. Nat'l Bank v. Voog*, 233 Conn. 352, 366, 659 A.2d 172 (1995)). As these are facts that should be available to Cincinnati pre-discovery, the Court grants the motion to strike the second affirmative defense without prejudice.

### Fourth Affirmative Defense – Failure to Mitigate Damages

The fourth affirmative defense states that "Plaintiffs' claims are barred to the extent they have failed to mitigate, minimize and/or avoid their claimed damages." Although stated in

6

conclusory terms, the Second Circuit's "context-specific" approach counsels in favor of permitting this defense to proceed, given that the facts to support such a defense are likely in the possession of the Plaintiffs at this stage and can be readily explored through discovery.  *See Jablonski*, 2020 WL 1444933, at *4 ("Defendant's tenth (failure to mitigate) and eleventh (wages) affirmative defenses are subject to a relaxed plausibility standard since the factual allegations necessary to support such defenses are likely not readily available to Defendant. Accordingly, the fact that these defenses appear to be conclusory is not fatal. Additionally, these defenses could succeed.").  The motion to strike the fourth affirmative defense is denied.

### Sixth Affirmative Defense – Breach of Contract

The sixth affirmative defense states that "Plaintiffs' claims are barred by reason of their breach of the insurance policy with Cincinnati."  In the context of its counterclaim Cincinnati asserts that Plaintiffs failed to disclose to Cincinnati the incidence of prior fires at the property. (Counterclaim ¶¶ 5–6.)  However Cincinnati does not identify which, if any, provision of the Policy that Plaintiffs breached by failing to disclose this information, or any other provision that Plaintiffs may have otherwise breached through their conduct.  Because this is information that should be readily available to the Defendant, the Court grants the motion to strike the sixth affirmative defense without prejudice.

### Tenth Affirmative Defense – Policy Exclusions

The Court reaches a contrary conclusion with respect to the tenth affirmative defense, which states that "Plaintiffs' claims against Cincinnati are barred, in whole or in part, by the terms, exclusions, limitations and/or conditions of the Policy."  Cincinnati has additionally pled that "[t]he Policy includes a Concealment, Misrepresentation or Fraud provision that states the commercial property coverage is void if the Defendants-in-Counterclaim intentionally concealed

or misrepresented a material fact concerning the Policy's coverage part, the covered property or a claim." (Counterclaim ¶ 8.)  Reading the tenth affirmative defense in the context of Cincinnati's counterclaim thus gives rise to the plausible allegation that Plaintiffs' failure to disclose the existence of prior fires at the insured property, including fires that had not been remediated, constituted the concealment or misrepresentation of a "material fact" within the meaning of the Policy's exclusion.  Whether or not Plaintiffs engaged in such concealment or misrepresentation will obviously require discovery but at this stage, the affirmative defense is sufficient to place Plaintiffs on notice of the nature of the defense.  The motion to strike the tenth affirmative defense is accordingly denied.

### *Thirteenth Affirmative Defense – Misrepresentation*

Finally, the thirteenth affirmative defense states that "Plaintiffs' claims are barred to the extent the Plaintiffs or their affiliates, agents, public adjuster, brokers or other representatives intentionally or unintentionally failed to disclose or concealed, omitted, or misrepresented facts material to the coverage, the property, the claims and/or alleged damages."  It is unclear to the Court if this defense derives from the terms of the Policy or some other authority under the law.  And if it derives from the terms of the Policy it is unclear how this defense differs from the tenth affirmative defense, which is more precise and ties the allegations to a specific exclusion in the Policy.  *Cf. Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, No. 16 CIV. 2767 (GBD), 2016 WL 6906583, at *8 (S.D.N.Y. Nov. 21, 2016) (striking "Defendants' affirmative defenses based on a breach of good faith and fair dealing as duplicative of Defendants' breach of contract specific denial, as Defendants have not cited to any new conduct distinguishing the obligations under the contract from the implied obligation of good faith and fair dealing").  The Court also agrees with Plaintiffs that the "vague allegations regarding the actions of unnamed third parties" whose actions

might be attributable to the Plaintiffs further undermines the factual and legal sufficiency of this defense.  *GEOMC Co.*, 918 F.3d at 99 (quoting *GEOMC Co. v. Calmare Therapeutics, Inc.*, No. 3:14-CV-01222 (VAB), 2016 WL 6122930, at *5 (D. Conn. Oct. 19, 2016)).  The motion to strike the thirteenth affirmative defense is granted without prejudice.

**Conclusion**

For the foregoing reasons, the motion to strike is granted with respect to the second, sixth, and thirteenth affirmative defenses without prejudice to the filing of an amended answer on or before June 25, 2021, and the motion is denied with respect to the fourth and tenth affirmative defenses.

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of June 2021.

*/s/ Kari A. Dooley*

KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE